UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MELISSA PLEMMONS,

    Plaintiff,

    v.

U.S. BANCORP, a corporation doing business in Washington,

    Defendant.

Case No. 04-5860

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

    This matter comes before the Court on Defendant's Motion for Summary Judgment seeking dismissal of Plaintiff's claims for wrongful discharge. After reviewing all materials submitted by the parties and relied upon for authority, the Court is fully informed and hereby grants U.S. Bancorp's motion and dismisses Plaintiff's case for the reasons described below.

**INTRODUCTION AND BACKGROUND**

    Plaintiff Melissa Plemmons filed this action in state court for damages against U.S. Bancorp for wrongful discharge alleging national origin discrimination, violation of public policy and breach of promise of specific treatment in specific situations. Defendant U.S. Bancorp removed the case to this Court on the basis of diversity jurisdiction. 28 U.S.C. § 1332.

ORDER - 1

Ms. Plemmons considers herself to be an Asian-American. She became employed as a teller by U.S. Bancorp in 1999 and was promoted in 2002 to a position as a personal banker. Ms. Plemmons worked in this capacity until the date of her termination, April 3, 2003.

On or about March 25, 2003, Ms. Plemmons had an appointment with a customer to sign loan documents. During the course of reviewing the documents with the customer it was determined the interest rate was incorrectly stated. Because it was late in the work day, the customer agreed to return the following day to sign the loan documents. Ms. Plemmons states that as she was leaving the office one of her supervisors, U.S. Bancorp Branch Manager Venus Mau, called her to ask whether the documents had been signed. Upon being informed of the delay in having the documents signed, Ms. Mau requested that the documents be printed out reflecting the proper interest rate and the March 25th date. Jennifer Shin, a Customer Service Representative also with supervisory authority over Ms. Plemmons, spoke with Ms. Mau and attempted to get the documents printed. Plaintiff states that Ms. Shin told her that Ms. Mau wanted to get the documents printed off "with the rates of today and have the customer sign them tomorrow." Ms. Plemmons refused to place the 25th date on the documents, voicing her opinion that doing so was illegal. She opines that the law requires that you need to give the customer three days right of rescission, and signing documents with the previous day's date would be improper. Plaintiff subsequently informed the human resources department of what had transpired. She explained that she was fearful of being disciplined or losing her job for objecting to illegal conduct.

On April 4, 2003, Ms. Plemmons was informed that she was being terminated for opening accounts for family members, a violation of U.S. Bancorp policy. In March of 2003, Mr. Shular, Vice President and Washington Regional Manager of U.S. Bancorp, received word that Ms. Plemmons had opened bank accounts for family members. Subsequent investigation revealed Ms. Plemmons had opened accounts for a number of family members and for her fiancee. Mr. Shular determined that this violation of Bancorp's Code of Ethics and Business Conduct warranted

ORDER - 2

dismissal, and Mr. Shular directed that it be done. Ms. Plemmons' supervisors, Jennifer Shin and Venus Mau, testified that they did not affect or recommend her discharge; the termination decision was made by Mr. Shular.

U.S. Bancorp policy prohibits employees from conducting account transactions for family members. This prohibition includes opening accounts without proper authorization. This policy is set forth in the Code of Ethics and Business Conduct. The Code provides that any violations may result in disciplinary action, including termination. The Code further provides that the policies and standards do not alter the "at will" employment relationship and that Bancorp may terminate any employee, at any time, for any reason. Before beginning employment, and annually as she certified compliance with the Code of Ethics and Business Conduct, Ms. Plemmons agreed to abide by these policies.

The U.S. Bancorp Employee Handbook specifically states that these "programs, policies and procedures do not constitute a contractual obligation to employees or a contract of employment. Your employment with the company is an 'at will' relationship. This means that we recognize your right to resign at any time for any reason; similarly, U.S. Bancorp may terminate any employee, at any time, for any reason." The performance and conduct provisions provide for "progressive counseling" where employee conduct does not meet expectations, yet also provides that in "some cases, U.S. Bancorp may determine immediate termination is warranted." As an employee, Ms. Plemmons received a copy of the Employee Handbook.

Ms. Plemmons states that she knew she could be terminated for violating her employer's policy on conducting account transactions for family members. Ms. Plemmons, nonetheless states that she believed she was terminated in violation of the Handbook because she was not provided progressive discipline. She supports this argument with the declarations of former employees who were not discharged for performing similar transactions. Ms. Plemmons asserts that the motivation for her discharge was her refusal to follow her supervisor's direction to pre-date the loan documents.

ORDER - 3

## STANDARDS FOR SUMMARY JUDGMENT

A summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56©); Korslund v. Dyncorp Tri-Cities Service, Inc., ___ Wn.2d ___, 125 P.3d 119, 124 (2005). A material fact is one upon which, in whole or in part, the outcome of the litigation depends. Morris v. McNicol, 83 Wn.2d 491, 494, 519 P.2d 7 (1974). The court considers in the light most favorable to the nonmoving party the facts submitted and all reasonable inferences from those facts. Hubbard v. Spokane County, 146 Wn.2d 699, 707, 50 P.3d 602 (2002). The nonmoving party may only defeat a motion for summary judgment with specific facts, rather than relying on bare allegations. Young v. Key Pharm., Inc., 112 Wn.2d 216, 225-26, 770 P.2d 182 (1989). Summary judgment should be granted if reasonable persons could reach but one conclusion from the evidence presented. Hubbard, at 707.

## WASHINGTON LAW AGAINST DISCRIMINATION

Washington's law against discrimination provides that it is an unfair practice for any employer to discharge any person from employment because of national origin. RCW 49.60.180(2). To establish a prima facie case of a wrongful termination based on national origin discrimination, an employee must demonstrate that he or she (1) belongs in a protected class; (2) was discharged; (3) was doing satisfactory work; and (4) was replaced by someone not in the protected class. Marquis v. City of Spokane, 130 Wn.2d 97, 113-114, 922 P.2d 43 (1996); Grimwood v. University of Puget Sound, Inc., 110 Wn.2d 355, 362, 753 P.2d 517 P.2d 517 (1988). The ultimate issue is the employer's motivation in the termination of employment. Cluff v. CMX Corp. Inc., 84 Wn.App. 634, 638, 929 P.2d 1136 (1997). To overcome a motion for summary judgment, a employment discrimination plaintiff must do more than express opinion or make conclusory statements; instead, plaintiff must establish specific and material facts to support each element of his or her prima facie

ORDER - 4

case. Marquis, at 105.

Ms. Plemmons unequivocally testified that she knows of no facts suggesting that anyone at U.S. Bancorp would discriminate against her because of her national origin. She further testifies that Jeff Shular, the person who made the decision to terminate her employment, did not know Ms. Plemmons's race, color or national origin. Defendant's motion for summary judgment, setting forth these facts and additional evidence of a lack of discriminatory animus toward Asian-Americans, argues Plaintiff cannot establish a prima facie case of national origin discrimination. The Plaintiff's response fails to oppose the dismissal of her claim of national origin discrimination.

Summary judgment is properly granted where the moving party has met its initial burden of showing no issue of material fact and adverse party makes absolutely no showing that there is a genuine issue for trial. See Brame v. St. Regis Paper Co., 97 Wn.2d 748, 649 P.2d 836 (1982)(when a motion for summary judgment is made, an adverse party may not rest upon the mere allegations or denials of his pleadings but must set forth specific facts showing that there is a genuine issue for trial). The cause of action for national origin discrimination is subject to dismissal. See, Demelash v. Ross Stores, Inc., 105 Wn.App. 508, 527, 20 P.3d 447 (2001).

**WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY**

Employment contracts that are indefinite in duration may generally be terminated by either the employer or the employee at will. Hubbards v. Spokane County, 146 We.2d 699, 707, 50 P.3d 602 (2002). There is no dispute here that Ms. Plemmons is an "at-will" employee. However, the Washington courts have recognized an exception to this general rule when an employee is discharged for reasons that contravene a clear mandate of public policy. Id.; Korslund v. Dyncorp Tri-Cities Service, Inc., ___ Wn.2d ___, 125 P.3d 119, 124 (2005). To establish a claim for wrongful discharge in violation of public policy, a plaintiff must prove: (1) the existence of a clear public policy (clarity element); (2) that discouraging the conduct in which they engaged would jeopardize the public policy (jeopardy element); (3) that the public-policy-linked conduct caused the dismissal

ORDER - 5

(causation element); and (4) the defendant must not be able to offer an overriding justification for the dismissal (absence of justification element).  <u>Korslund</u>, at 125; <u>Hubbard</u>, at 707.

The public policy exception to the at-will employment doctrine is a narrow one and applied cautiously to avoid the exception swallowing the rule that employment is terminable at will. <u>Sedlacek v. Hillis</u>, 145 Wn.2d 379, 390, 36 P.3d 1014 (2001); <u>Blinka v. Wash. State Bar Assn.</u>, 109 Wn.App. 575, 586, 36 P.3d 1094 (2001).  The employee bears the burden to prove that the discharge violated a clear mandate of public policy.  Moreover, courts must 'find' not 'create' public policy.  <u>Selix v. Boeing Co.</u>, 82 Wn.App. 736, 741, 919 P.2d 620 (1996).

**The Clarity Element**

Whether or not a clear mandate of public policy exists, sufficient to meet the clarity test is a question of law.  <u>Sedlacek</u>, at 388.  While the ultimate inquiry is whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme, <u>Thompson v. St Regis Paper Co.</u>, 102 Wn.2d 219, 232, 685 P.2d 1081 (1984), the clarity element merely requires the plaintiff establish a clear statement of public policy, not that the public policy was violated.  <u>Hubbards</u>, at 708-09.  Findings of public policy must be grounded in legislation or prior jurisprudence.  <u>Sedlacek</u>, at 385.

Ms. Plemmons asserts as the public policy basis for her claim the "buyer's remorse" provision contained in the Truth in Lending Act.  Under 15 U.S.C. § 1635 and its regulations, (Regulation Z), when a security interest is acquired in the residence of the person to whom credit is extended, the borrower shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or delivery of material disclosures, whichever is later.

The Truth in Lending Act provides an express Congressional finding that regulation of the extension of consumer credit serves a public policy. See, 15 U.S.C. § 1601(a).  The court in <u>Laws v. Aetna Finance Co.</u>, 667 F.Supp. 342, 345 (N.D. Miss.,1987), found the Truth in Lending Act is designed to establish a clear public policy that consumers of credit covered by the statute are to be

ORDER - 6

given protection. "Such manifest public policy should not be lightly regarded nor frustrated by refusing to grant an employee who seeks to comply with those laws a cause of action for being discharged for just that reason."  Id.

Thus, as Plaintiff argues, there is a clear public policy of providing those consumers of credit covered by the statute, a three-day right of recession.

**The Jeopardy Element**

In order to establish jeopardy, "a plaintiff must show that he or she engaged in particular conduct, and the conduct directly relates to the public policy, or was necessary for the effective enforcement of the public policy."  Korslund, at 126; Hubbards, at 713.  The plaintiff has to prove that discouraging the conduct that he or she engaged in would jeopardize the public policy. Korslund, at 126; Ellis v. City of Seattle, 142 Wn.2d 450, 460, 13 P.3d 1065 (2000).

As explained, Ms. Plemmons' identifies the public policy to protect consumers of credit by providing a three-day period for rescission of certain credit transactions.  She asserts that in order to effectuate this purpose, the law prohibits retaliation against an employee who seeks to comply with this mandate or refuses to participate in it's violation.  See, Laws v. Aetna Finance Co., 667 F.Supp. 342, 345 (N.D. Miss.,1987)

Application of this mandate of public policy to Plaintiff's conduct does not satisfy the jeopardy element.  As asserted by Plaintiff, she was requested to print off loan documents with today's date on them even though they would not be signed until the following day.  Ms. Plemmons explained that the customer needed to be given three days right of rescission and that signing them the next day with the previous day's date is not proper.  She testifies that "she believed that changing the dates of the documents was illegal."

Under 15 U.S.C. § 1635(a), when a security interest is acquired in real property which is the residence of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or

ORDER - 7

the delivery of the disclosures required under this section and all other material disclosures required under this part, whichever is later. LaGrone v. Johnson, 534 F.2d 1360, 1361 (9th Cir. 1976). The Truth in Lending Act's buyers' remorse provision requires the lender to provide a form stating the specific date on which the three-day rescission period expires. 15 U.S.C. § 1635(a). If the lending institution omits the expiration date and fails to cure the omission by subsequently providing the information, the borrower may rescind the loan within three years after it was consummated. 15 U.S.C. § 1635(f). See, Semar v. Platte Valley Federal Sav. & Loan Ass'n, 791 F.2d 699, 701-02 (9th Cir. 1986). These provisions provide that the lender, U.S. Bancorp, must provide the 'buyer's remorse' form stating the specific date on which the three-day rescission period expires. Plaintiff Plemmons has not alleged, or set forth any evidence, that she was directed to violate this mandate. The date of expiration of the buyer's remorse provision is not specified in any of Plaintiff's evidence. There is no proof the documents that were to be pre-dated were intended to be given to the consumer to sign with the objective of reducing the recision period. Further, it is immaterial to the enforcement of the buyer's remorse provision that the loan documents contain a date that is inconsistent with the signing date. The three-day period for rescission runs from the date the transaction is consummated or date of delivery of all material disclosures, whichever is later. The transaction between the lender U.S. Bancorp and the borrower could not be consummated until, at the earliest, the actual date the documents were signed by the borrowers and all disclosures were delivered (including the buyer's remorse form). The conduct of Ms. Plemmons does not directly relate to the public policy of providing the borrowers the right of a three-day rescission period. Thus, Plaintiff has not established the jeopardy element.

        The conduct of the plaintiff must also be necessary for the effective enforcement of the public policy. The plaintiff must show that other means of promoting the public policy are inadequate. Korslund, at 126; Hubbards, at 713. Under the terms of the Truth in Lending Act, where the date for exercise of the right of rescission is incorrectly specified, or the buyer's right of rescission form is

ORDER - 8

1 incomplete or inaccurate, the borrower's right of rescission is extended for three years after
2 consummation. See, <u>Jackson v. Grant</u>, 890 F.2d 118, 122 (9th Cir. 1989); <u>Plemmons v. M. L. S. C.
3 Properties, Inc</u>., 511 F.2d 935, 944 (9th Cir. 1975). The Act also authorizes an award of civil
4 penalties for violation of the buyer's remorse provisions. 15 U.S.C. § 640(a); <u>Plemmons</u>, at 945.
5 Instead of a three-day grace period, the borrower is provided a three-year period in which to rescind
6 the credit transaction. The borrower is also is entitled to an award of costs and attorney's fees in any
7 successful action to enforce the buyer's remorse provisions. <u>Id</u>. As a matter of law that these
8 remedial provisions of the Act provide an adequate means for it's enforcement. See, <u>Korslund</u>, at
9 126-27 (remedies under the Energy Reorganization Act are adequate to protect the policy of
10 protecting the health and safety of the public and to protect against waste or fraud in the operations
11 of the nuclear industry).  Ms. Plemmons' claim of wrongful discharge in violation of public policy is
12 subject to dismissal.

**The Causation and Absence of Justification Elements**

14 An additional failure of plaintiff's evidence is a lack of proof of causation.  A plaintiff must
15 prove that her public policy linked conduct actually caused her discharge from employment.
16 <u>Gardner v. Loomis Armored, Inc</u>., 128 Wn.2d 931, 941, 913 P.2d 377 (1996).  There must be
17 sufficient evidence of a nexus between the discharge and the alleged policy violation. <u>Havens v. C &
18 D Plastics, Inc</u>., 124 Wn.2d 158, 179, 876 P.2d 435 (1994).  Ms. Plemmons makes only a temporal
19 nexus to her discharge; she was terminated eight days after her conduct of refusing to pre-date the
20 loan documents.  But coincidence is not proof of causation.  <u>Anica v. Wal-Mart Stores, Inc</u>., 120
21 Wn.App. 481, 489, 84 P.3d 1231 (2004).  Ms Plemmons has failed to put forth any evidence
22 addressing the fact that neither her supervisors, Ms. Mau, or Ms. Shin, made the decision, or were
23 involved in the decision, to terminate her employment.  Jeff Shular, Vice President and Washington
24 Regional Manager,  made that decision based on Ms. Plemmon's actions in transacting business
25 (opening accounts) for family members.  Ms. Plemmons understood that a violation of this policy

ORDER - 9

could subject an employee to termination.  Plaintiff has failed to raise genuine issue of material fact of a nexus between her discharge and the alleged policy violation.  Plaintiff has also failed to raise a genuine issue of fact as the causation element by failing to rebut the stated justification for her termination.  Plaintiff's claim for wrongful discharge in violation of public policy is subject to dismissal.

## PROMISE OF SPECIFIC TREATMENT IN SPECIFIC SITUATIONS

To establish a cause of action for breach of promise of specific treatment in specific situations, an employee must prove: (1) that a statement in an employee manual or handbook or similar document amounts to a promise of specific treatment in specific situations, (2) that the employee justifiably relied on the promise, and (3) that the promise was breached . Korslund, at 128; Bulman v. Safeway, Inc., 144 Wn.2d 335, 340-41, 27 P.3d 1172 (2001).  Ms. Plemmons alleges that U.S. Bancorp breached a promise that she would be subject to progressive discipline.  However, she has not produced evidence that supports a finding of (1) a promise, (2) reliance or (3) breach.  The absence of any one of these elements defeats her claim.

U.S. Bancorp's Employee Handbook specifically states that "These programs, policies and procedures do not constitute a contractual obligation to employees or a contract of employment.  Your employment with the company is an 'at will' relationship.  This means that we recognize your right to resign at any time for any reason; similarly, U.S. Bancorp may terminate any employee, at any time, for any reason."  This language is also contained in the U.S. Bancorp Code of Ethics and Business Conduct.

Ms. Plemmons acknowledges that U.S. Bancorp policy prohibits employees from processing transactions relating to family members and that U.S. Bancorp is entitled to discharge an employee for violating this policy.  Plaintiff's evidence that purports to undermine this policy does not raise a genuine issue of material fact that there exist a promise of progressive discipline.  Nor has Ms. Plemmons put forth any credible evidence of justifiable reliance on a promise of progressive

ORDER - 10

discipline. The disciplinary provisions of the employee handbook unambiguously state that if employee conduct does not meet expectations, U.S. Bancorp may determine immediate termination is warranted. It contains no mandatory terms providing for progressive discipline. See Stewart v. Chevron Chem. Co., 111 Wn.2d 609, 613-14, 762 P.2d 1143 (1988). The Code of Ethics and Business Conduct also provides that the policies and standards do not alter the "at will" employment relationship and that Bancorp may terminate any employee, at any time, for any reason. The Code unambiguously states that any violations may result in disciplinary action, including termination. Moreover, Ms. Plemmons signed an acknowledgment which again communicates an 'at will' relationship with U.S. Bancorp and her understanding of the possibility of termination for violations of the Code of Ethics and Business Conduct. In McClintick v. Timber Products Manufacturers, 105 Wn.App. 914, 922, 21 P.3d 328 (2001), under similar facts the court declined to find an employee could reasonably rely on its employer's model for progressive discipline, where the employee's letter of employment and the policy handbook unambiguously provided that the employment was at-will. Ms. Plemmons argument ignores the language which makes it clear that her employment was at the will of U.S. Bancorp. She cannot reasonably rely on a progressive discipline policy based solely on statements of former employees. She does not show a sufficient pattern of inconsistent employer conduct to avoid the plain language of the Handbook and Ethics Code. U.S. Bancorp reserved the right to forego progressive discipline depending on the circumstances. The record shows no pattern of imposing progressive discipline under similar facts. Instead, the gravity of the offense at the discretion of U.S. Bancorp is the sole standard found in the employee manuals. While that standard may be illusory from Ms. Plemmons' view, it is not one that invites reinterpretation by this court. Ms. Plemmons has failed to raise a genuine issue of material fact that supports a claim for breach of a promise of specific treatment in specific situations.

## CONCLUSION

ORDER - 11

For the reasons set forth above, Defendant U.S. Bancorp is entitled to summary judgment of dismissal of Plaintiff's claims in their entirety.

ACCORDINGLY,

IT IS ORDERED:

Defendant's Motion for Summary Judgment [Dkt. #19] is GRANTED, and this case dismissed in its entirety.

DATED this 6th day of February, 2006.

/s/ Franklin D. Burgess

FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

ORDER - 12